UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| EVGENY FIRSOV,<br><br>              Plaintiff,<br><br>      vs.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>              Defendant. | CIV. NO. 23-00429 LEK-KJM |

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFF'S AMENDED COMPLAINT**

On October 11, 2024, Defendant City and County of
Honolulu ("the City") filed its Motion for Summary Judgment as
to Plaintiff's Amended Complaint ("Motion"). [Dkt. no. 65.] Pro
se Plaintiff Evgeny Firsov's ("Plaintiff") filed his memorandum
in opposition on October 24, 2024. [Dkt. no. 69.] On November 1,
2024 the City filed its reply. [Dkt. no. 73.22] The Court
construed Plaintiff's "Motion for Sanctions Under Rule 11 of the
Federal Rules of Civil Procedure," filed on October 30, 2024,
[dkt. no. 70,] as an attempt to contest facts asserted in the
City's Motion, and allowed Plaintiff to file a separate concise
statement of facts, which Plaintiff had not submitted at that
point. See Minute Order – EO: Court Order: Construing
Plaintiff's "Motion for Sanctions Under Rule 11 of the Federal
Rules of Civil Procedure"; and Granting Plaintiff Leave to File
a Separate Concise Statement of Facts, filed 11/1/24 (dkt.

no. 74). Plaintiff filed a Separate Concise Statement of Facts
on November 26, 2024 ("Plaintiff's CSOF"). [Dkt. no. 80.] The
City filed a Reply to Plaintiff's Separate and Concise Statement
of Facts Regarding Defendant's Motion for Summary Judgment on
December 12, 2024 ("City's Reply CSOF"). [Dkt. no. 86.] The
Court finds this matter suitable for disposition without a
hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice
for the United States District Court for the District of Hawaii
("Local Rules"). For the reasons set forth below, the City's
Motion is granted, and summary judgment is granted in favor of
the City as to all claims.

### BACKGROUND

This case arises from the City's alleged refusal to
grant Plaintiff a REAL-ID compliant driver's license ("REAL ID")
in 2023 due to Plaintiff's asylum status. See Amended Complaint,
filed 4/3/24 (dkt. no. 43), at pgs. 1-3.

On July 20, 2023, Plaintiff went to the Wai`anae
branch of the City's Motor Vehicle, Licensing, and Permits
Division ("DMV"), seeking a REAL ID to replace his driver's
license, which was set to expire on October 26, 2023. [City's
Separate and Concise Statement of Facts in Support of Its Motion
for Summary Judgment, filed 10/11/24 (dkt. no. 66) ("City's
CSOF"), at ¶ 1; Plaintiff's CSOF at ¶ I.1 (partially admitting

the City's ¶ 1);[1] City's Reply CSOF at ¶ 1 (admitting the additional statement in Plaintiff's ¶ I.1).[2]] At that time, Plaintiff's work authorization and then-driver's license were valid through October 26, 2023. [City's CSOF at ¶ 21; Plaintiff's CSOF at ¶ I.21 (admitting the City's ¶ 21); City's CSOF, Declaration of Jacqueline Windrath ("Windrath Decl.") at ¶ 5.[3]]

        The City admits that Plaintiff presented a U.S. Citizenship and Immigration Services ("USCIS") Asylum Approval notice, dated October 20, 2021 and an original Form I-94, with a USCIS stamp stating "Asylum granted indefinitely." See Plaintiff's CSOF at ¶ II.3; City's Reply CSOF at Responsive ¶ 3.[4]

        After Plaintiff presented documentation, a DMV clerk looked up Plaintiff's information in a United States Department of Homeland Security database called SAVE, through the

---

[1] The first section of Plaintiff's CSOF responds to the statements in the City's CSOF.

[2] The first portion of the City's Reply CSOF responds to the objections and additional statements included in the statements within Section I of Plaintiff's CSOF.

[3] Jacqueline Windrath is Acting Chief Licensing Examiner & Inspector for the City's Department of Customer Services. [Windrath Decl. at ¶ 1.]

[4] The second section of Plaintiff's CSOF consists of Plaintiff's own concise statement of facts. The second portion of the City's Reply CSOF responds to Section II of Plaintiff's CSOF.

Verification of Lawful Status ("VLS") system. [City's CSOF at ¶¶ 2-3; Plaintiff's CSOF at ¶ I.2 (admitting the City's ¶ 2 "with reservations" not relevant here); id. at ¶ I.3.] The VLS check indicated Plaintiff had a pending asylum application. [City's CSOF at ¶ 4; Plaintiff's CSOF at ¶ I.4.]

Nikita Rios ("Rios"), a City DMV Driver's License Examiner who helped process Plaintiff's request for a REAL ID at the Wai`anae DMV, stated that if the VLS system showed that Plaintiff had an approved asylum application, Plaintiff would have been issued a REAL ID at the Wai`anae DMV that day. [City's CSOF, Declaration of Nikita Rios ("Rios Decl.") at ¶¶ 1, 3-6.] Rios believed that federal law prohibited the DMV from issuing a REAL ID to Plaintiff because his asylum status was listed in the VLS system as pending. [Id. at ¶ 7.] Rios, along with another DMV employee at the time, Corinthia Ferreira, contacted their supervisor Jackie Windrath ("Windrath"), who confirmed that they were prohibited from issuing Plaintiff a REAL ID. [Id. at ¶¶ 3, 9; Windrath Decl. at ¶¶ 1, 3-6.] Plaintiff was told that he could be issued an eight-year limited purpose driver's license that day. [City's CSOF at ¶ 8; Plaintiff's CSOF at ¶ I.8; Rios Decl. at ¶ 7.] Rios also suggested Plaintiff could come back closer to the expiration date of his current license, at which point the VLS system may have updated, which would allow the DMV

4

to issue Plaintiff a REAL ID. [City's CSOF at ¶ 9; Plaintiff's CSOF at ¶ I.9; Rios Decl. at ¶ 8.]

Plaintiff then went to the Kapālama branch of the City DMV. [City's CSOF at ¶ 11; Plaintiff's CSOF at ¶ I.11.] The DMV clerk at the Kapālama branch, Ana Marie Fajardo ("Fajardo"), looked up Plaintiff's records, and found that the Wai`anae DMV had checked the VLS system, which showed that Plaintiff had a pending asylum application. [City's CSOF at ¶ 12; Plaintiff's CSOF at ¶ I.12.] Fajardo understood that Plaintiff could only get a REAL ID for the length of his work authorization, and his existing REAL ID was valid through his work authorization period, so she could not renew his REAL ID. [City's CSOF, Declaration of Ana Marie Fajardo ("Fajardo Decl.") at ¶ 7.] Fajardo's supervisor, Essie Kloulchad ("Kloulchad"), confirmed that Fajardo could not issue Plaintiff a REAL ID. [City's CSOF at ¶ 13; Plaintiff's CSOF at ¶ I.13; Fajardo Decl. at ¶ 8.] Fajardo offered Plaintiff a limited purpose driver's license, valid for eight years. [City's CSOF at ¶ 14; Plaintiff's CSOF at ¶ I.14; Fajardo Decl. at ¶ 9.] Fajardo stated that, if VLS had shown that Plaintiff had an approved asylum application, she would have issued him a REAL ID. [Fajardo Decl. at ¶ 10.]

The City made two electronic requests to the SAVE database on July 20, 2023. [Plaintiff's CSOF at ¶ II.7, City's CSOF at Responsive ¶ 7; Plaintiff's CSOF, Annex 4 at PageID.662-

63 (SAVE Responses, dated 7/20/23).] These requests showed Plaintiff's asylum application as pending. [Plaintiff's CSOF, Annex 4 at PageID.662-63.]

On July 26, 2023, Plaintiff received a letter from the City in response to an email from him, stating: "Unfortunately, we are unable to renew your REAL ID driver's license. While your Form I-94 was verified in our system, it shows that your legal presence in Hawaii is limited to the duration of your temporary employment, which ends on August 26, 2023." [Plaintiff's CSOF, Annex 5 (7/26/23 letter from Kimbery M. Hashiro, Director of the City Department of Customer Services, to Plaintiff).]

On August 4, 2023, Plaintiff filed a pre-trial claim with the City for its refusal to issue him a REAL ID. [Id., Annex 6 (Plaintiff's pre-trial claim).]

On September 22, 2023, Kloulchad checked the VLS system, and it showed Plaintiff's asylum application as pending. [Kloulchad Decl. at ¶ 6.] On October 12, 2023, Kloulchad received an email from the SAVE system stating that a verification response was available. [Id. at ¶ 7; id., Exh. 6 (10/12/23 email from the SAVE system).] On October 12, 2023, Kloulchad checked the SAVE system, and it showed Plaintiff's asylum application as approved. [Id. at ¶ 7; id., Exh. 7 (the 10/12/23 SAVE system response).] The City received verification that Plaintiff's asylum application was approved on October 12,

2023. [City's Reply CSOF, Second Declaration of Jacqueline
Windrath ("Second Windrath Decl.") at ¶ 5.] SAVE records show
that the Hawai`i Department of Transportation checked the system
twice on July 20, 2023; four or five times on September 22,
2023; once on October 24, 2025; and twice on October 25, 2023.
[Amended Complaint, Annex 5 at PageID.334-36 (SAVE records
listing nine CaseChecks from 7/20/23 to 10/25/23, and displaying
four responses to requests initiated on 9/22/23); Plaintiff's
CSOF, Annex 7 (SAVE Responses, initiated on 9/22/23, and
displaying give responses to requests initiated on 9/22/23) at
PageID.668-72.]

        The parties agree that on October 9, 2023, Plaintiff
obtained a Real ID issued by Kaua`i County. [City's CSOF at
¶ 23; Plaintiff's CSOF at ¶ I.23.]

        On October 20, 2023, the City contacted an employee at
the Kaua`i DMV regarding investigating the issuance of
Plaintiff's Real ID. See Plaintiff's CSOF at ¶ II.25; City's
Reply CSOF at Responsive ¶ 25; Plaintiff's CSOF, Annex 8
(10/20/23 email from Nilda Ocreto, Chief Licensing Examiner &
Inspector, to Jeremy Lee).

        The City's DMV relies on guidance from the American
Association of Motor Vehicle Administrators ("AAMVA") in
implementing federal regulations. [Windrath Decl. at ¶ 8.]
Between at least July 20, 2023 and October 12, 2023, the City

                                7

used a guide on required documents for REAL ID in the course of the City DMV's work. [Plaintiff's CSOF at ¶ 29, City's Reply CSOF at Responsive ¶ 29; Amended Complaint, Annex 1 (City's Hawaii Driver License/Permit/State Identification Card Required Documents Guide (REAL ID)).]

The parties dispute what information the City DMV had on July 20, 2023. The City contends that, on July 20, 2023, City DMV employees had an AAMVA chart with information on REAL ID eligibility. [Windrath Decl. at ¶ 9; id., Exh. 4 (AAMVA chart, effective 2/11/19).] The City contends it received an updated AAMVA chart in August 2023. [Id. at ¶ 10; id., Exh. 5 (updated AAMVA chart, marked VLS AMIE SPECS 3.3).] Plaintiff contends the City had access to the updated AAMVA chart since November 14, 2022, which the City denies. [Plaintiff's CSOF at ¶¶ 27-28; City's Reply CSOF at Responsive ¶¶ 27-28; Plaintiff's CSOF, Annex 10 (VLS AMIE Specification 3.3 by AAMVA).] Windrath stated she did not know when the updated AAMVA chart was produced, but the City first received the updated AAMVA chart on August 7, 2023. See Second Windrath Decl. at ¶¶ 2, 4.

Plaintiff alleges the refusal to renew his REAL ID violated: the Real ID Act of 2005; Title 19 Chapter 149 Section 2 of the Hawai`i Administrative Rules; the Civil Rights Act of 1964; the Immigration and Nationality Act, Title 8 United States Code Section 1324(b), *et seq.*; the Equal Protection

8

Clause of the Fourteenth Amendment of the United States
Constitution; and Article I, Sections 2 and 5 of the Hawai`i
Constitution. Plaintiff also alleges violations of international
law: Articles 17, 26, 27 of the Convention Relating to the
Status of Refugees; and Article 26 of the International Covenant
on Civil and Political Rights. [Amended Complaint at pgs. 9-12.]
Plaintiff requests $500,000 in compensatory damages, attorneys'
fees and costs, and any other appropriate relief. [Id. at
pg. 13.]

The City seeks summary judgment on all claims.
[Motion, Mem. in Supp. at 1-2.]

## DISCUSSION

### I.  Real ID Act

The Real ID Act of 2005 ("the Act") is codified at
Title 49 United States Code Section 30301, et seq. The Act,
among other things, establishes standards for the National
Driver Register, provides for reports to be made to the
Secretary of Transportation, provides state entities with means
to access the register of driving record information, and
provides for criminal penalties for the unauthorized disclosure
of information. See 49 U.S.C. §§ 30302, 30304-05, 30307. No
provision of the Act compels the issuance of a REAL ID. There is
no indication of "rights-creating language critical to showing
the requisite congressional intent to create new rights."

9

Gonzaga Univ. v. Doe, 536 U.S. 273, 287 (2002) (internal
quotation marks and citations omitted). Accordingly, the Act
does not provide for a private cause of action, nor may suit be
brought pursuant to Section 1983. See id. at 286 ("[W]here the
text and structure of a statute provide no indication that
Congress intends to create new individual rights, there is no
basis for a private suit, whether under § 1983 or under an
implied right of action."); see also Price v. Rampersad, 22-cv-
03131-DG-SJB, 2023 WL 2184867, at *4 n.4 (E.D.N.Y. Jan. 3, 2023)
("The REAL ID Act . . . contains no private right of action.").

        Plaintiff's claim under the Act therefore fails as a
matter of law. The City is entitled to summary judgment on this
claim. See Fed. R. Civ. P. 56(a) ("The court shall grant summary
judgment if the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a
matter of law.").

## II.  Hawai`i Administrative Rules

        Hawai`i Administrative Rules Section 19-149-2 provides
definitions for Chapter 149 "State Civil Identification." It
contains definitions of "limited purpose state civil
identification card," "lawful status," and "temporary lawful
status," among other things.

        "To determine whether a private right of action exists
under Hawaii statutory or regulatory law, the court must

determine whether the state legislature intended to create a private cause of action." White v. Time Warner Cable Inc., Civil No. 12-00406 JMS-BMK, 2013 WL 787967, at *5 (D. Hawai`i Feb. 28, 2013) (citing Alakai Na Keiki, Inc. v. Matayoshi, 127 Haw. 263, 285, 277 P.3d 988, 1010 (2012)). While legislative intent is the determinative factor in determining whether a private right of action exists, courts consider:

> [F]irst, whether the plaintiff is one of the class for whose especial benefit the statute was enacted; . . . that is, does the statute create a . . . right in favor of the plaintiff. Second, . . . whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one. Third, whether it [is] consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

Alaka`i Na Keiki, 127 Hawai`i at 285, 277 P.3d at 1010 (brackets, citations, and internal quotation marks omitted) (some ellipses in original).

The Hawai`i Administrative Rules Section 19-149-2 definitions regarding state civil identification were adopted by the director of the State of Hawai`i Department of Transportation pursuant to Hawai`i Revised Statutes Sections 286-303 and 286-304. Section 19-149-2 does not expressly create a private right of action. Nor does Section 19-149-2 contain any entitlement for relief suggesting a private right of action is implied.

11

Analysis of the <u>Alaka`i Na Keiki</u> factors demonstrates
that neither Hawai`i Revised Statutes Sections 286-303 and 286-
304 nor Hawai`i Administrative Rules Section 19-149-2 implies a
private right of action. Neither Hawai`i Revised Statutes
Section 286-303 nor Section 286-304 create a right in favor of
Plaintiff, but instead are generally targeted to "any adult or
minor," <u>see</u> Haw. Rev. Stat. § 286-303(a), rather than a
particular class of people. The purpose of Act 310, the Act
Relating to Civil Identification, which enacted Hawai`i Revised
Statutes Sections 286-303 and 286-304 effective January 2013,
was to: "[c]onsolidate the driver's license and civil
identification programs for the State of Hawaii under the
director of transportation" and "[a]llow county examiners of
drivers to issue civil identification cards," by January 15,
2013, the date the REAL ID Act was required to be implemented.
2012 Haw. Sess. Laws Act 310, § 1 at 1037. It would not be
consistent with the purpose of the legislative scheme to imply a
private right of action for Plaintiff. Therefore, Plaintiff
cannot raise a claim directly under this regulation as a matter
of law. Accordingly, the City is entitled to summary judgment on
this claim.

III. **International Law**

   Plaintiff brings claims under the Convention Relating

to the Status of Refugees and the 1966 International Covenant on

Civil and Political Rights. [Amended Complaint at pgs. 9-12.]

   Plaintiff's claims under the Convention Relating to

the Status of Refugees fail as a matter of law.

> "For any treaty to be susceptible to judicial
> enforcement it must both confer individual rights
> and be self-executing." Cornejo v. County of San
> Diego, 504 F.3d 853, 856 (9th Cir. 2007). If a
> treaty is self-executing, that is, "it has the
> force of domestic law without the need for
> implementing legislation by Congress," it
> nonetheless will not provide a **private** right of
> action unless the language of the treaty supports
> such an interpretation and Congress, by its
> ratification, thus "intended to create private
> rights and remedies enforceable in American
> courts." See id. at 856-57 (emphasis added).
> Moreover, the "general rule" is that
> "[i]nternational agreements, even those directly
> benefitting private persons, [] do not create
> private rights or provide for a private cause of
> action." See id. at 859 (internal quotation and
> citation omitted).

Alperin v. Franciscan Ord., No. C-99-4941 MMC, 2009 WL 2969465,

at *5 (N.D. Cal. Sept. 11, 2009) (brackets and emphasis in

Alperin).

   The United States was effectively made a party to the

Convention Relating to the Status of Refugees through the 1967

United Nations Protocol Relating to the Status of Refugees

("Protocol"). See INS v. Aguirre-Aguirre, 526 U.S. 415, 427

(1999) (noting the Protocol incorporates by reference Articles 2

through 34 of the United Nations Convention Relating to the
Status of Refugees, and the United States acceded to the
Protocol in 1968). However, the Protocol is not self-executing,
and thus does not grant a private right of action. See Barapind
v. Reno, 225 F.3d 1100, 1107 (9th Cir. 2000) (some citations
omitted) (citing INS v. Stevic, 467 U.S. 407, 428 n.22, 104 S.
Ct. 2489, 81 L. Ed. 2d 321 (1984)). Because no cause of action
exists under the Convention Relating to the Status of Refugees,
all claims brought pursuant to it fail as a matter of law.

　　　　Similarly, the 1966 International Covenant on Civil
and Political Rights is not self-executing, and thus does not
grant a private right of action. See Sosa v. Alvarez-Machain,
542 U.S. 692, 735 (2004).

　　　　Accordingly, Plaintiff's claims brought pursuant to
either of these two international agreements fail as a matter of
law. The City is entitled to summary judgment on these claims.

## IV.  Section 1324b of the Immigration and Nationality Act

　　　　Plaintiff alleges a claim pursuant to Title 8 United
States Code Section 1324b, part of the Immigration and
Nationality Act. [Amended Complaint at ¶ 7.1.] Section 1324b
prohibits discrimination against individuals "with respect to
the hiring, or recruitment or referral for a fee, of the
individual for employment or the discharging of the individual
from employment" on certain bases. 8 U.S.C. § 1324b(a)(1); see

14

also <u>Trivedi v. U.S. Dep't of Homeland Sec.</u>, Case No. 16-cv-
01122-JD, 2016 WL 10651086, at *1 (N.D. Cal. Nov. 21, 2016)
(noting that 8 U.S.C. § 1324b "prohibits discrimination based on
national origin or citizenship status in the employment
context"). However, Plaintiff clearly alleges he "did not enter
into an employment relationship with the City," [Amended
Complaint at ¶ 7.1,] and Plaintiff does not cite to any evidence
that he is in an employment relationship with the City. There is
no genuine issue of material fact that Plaintiff is not in an
employment relationship with the City, and this claim fails as a
matter of law. Accordingly, the City is entitled to summary
judgment on Plaintiff's claim brought pursuant to Title 8 United
States Code Section 1324b.

## V.   <u>Invasion of Privacy</u>

Plaintiff alleges the City invaded his privacy by
refusing to give him a REAL ID. [Amended Complaint at ¶ 8.]
Plaintiff alleges the City "**would** plunge [him] into unbearable
life circumstances – how could [he], **starting in May 2025**,
confirm [his] identity at [Transportation Security
Administration] checkpoints and at the entrance to federal
institutions?" [<u>Id.</u> (emphases added).]

The City correctly contends that Plaintiff does not
have standing to bring this claim. "To have standing, a
plaintiff must present an injury that is concrete,

15

particularized, and actual or imminent; fairly traceable to the
defendant's challenged behavior; and likely to be redressed by a
favorable ruling." Dep't of Com. v. New York, 588 U.S. 752, 766
(2019) (citation and internal quotation marks omitted). A
"conjectural or hypothetical" injury is insufficient to satisfy
standing requirements. Lujan v. Defs. of Wildlife, 504 U.S. 555,
560 (1992) (citation and quotation marks omitted).

Plaintiff does not have standing to bring a claim for
damages for the risk of future harm. See, e.g., TransUnion LLC
v. Ramirez, 594 U.S. 413, 441 (2021) ("[T]he risk of future harm
on its own does not support Article III standing for the
plaintiffs' damages claim."). Further, Plaintiff's fear of
potential future harm is not a sufficiently concrete injury to
confer standing. See Clapper v. Amnesty Int'l USA, 568 U.S. 398,
416 (2013) (holding that the plaintiffs "cannot manufacture
standing merely by inflicting harm on themselves based on their
fears of hypothetical future harm that is not certainly
impending" (citations omitted)). Any potential harm is not
"certainly impending" because Plaintiff acquired a REAL ID.

Construing all evidence in the light most favorable to
Plaintiff,[5] Plaintiff fails to establish standing to assert his
claim of invasion of privacy. See Gerlinger v. Amazon.com Inc.,

---

[5] See Harris v. Cnty. of Orange, 17 F.4th 849, 855 (9th Cir.
2021).

526 F.3d 1253, 1255–56 (9th Cir. 2008) (holding the district court properly dismissed a claim because the plaintiff failed to meet his burden of establishing a genuine issue of material fact as to whether he suffered an injury-in-fact in response to defendants' motion for summary judgment). Accordingly, this claim must be dismissed.

## VI.  Equal Protection Clause of Fourteenth Amendment

There is no direct cause of action under the United States Constitution. Rather, "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) (citations omittted). Because Plaintiff is proceeding pro se, the Court liberally construes Plaintiff's claim brought pursuant to the Equal Protection Clause of the Fourtheenth Amendment, as brought under Title 42 United States Code Section 1983. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021) (quotation marks and citation omitted).

17

"'The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.'" Sampson v. Cnty. of Los Angeles, 974 F.3d 1012, 1022 (9th Cir. 2020) (some internal quotation marks omitted) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). Equal protection claims may be premised on a showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class. See Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). An equal protection claim can also be established by showing that the defendant "intentionally treated similarly situated individuals differently without a rational relationship to a legitimate state purpose." Makanani v. Wagutsuma, CIV. NO. 19-00546 JAO-RT, 2019 WL 7373030, at *4 (D. Hawai`i Dec. 31, 2019) (citing Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601–02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008)); see also SmileDirectClub, Ltd. Liab. Co. v. Tippins, 31 F.4th 1110, 1122-23 (9th Cir. 2022).

Here, Plaintiff's allegations fall into the former category of equal protection claims. Plaintiff alleges facts

18

indicating he was discriminated against because of his membership in a protected class. See generally Amended Complaint at pgs. 1-6. Therefore, the Court will analyze Plaintiff's equal protection claim as a class-based claim.

For a class-based equal protection claim, "a plaintiff must show that the defendant[] acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Furnace, 705 F.3d at 1030 (citation omitted).

Plaintiff's precise equal protection theory is difficult to discern. Plaintiff alleges that the City discriminated against him on the basis of "immigration status or/and alienage or/and citizenship or/and nationality or/and ancestry." [Amended Complaint at pg. 6.] Plaintiff also alleges that "many other asylee[s] or refugee[s]" cannot acquire REAL ID cards at DMVs in Honolulu, because they lack a foreign passport or similar documentation. [Id. at pg. 4.[6]] However, in

---

[6] To the extent that Plaintiff brings an equal protection claim based on lack of proper documentation, this claim fails because Plaintiff had all the documentation necessary to begin the license renewal process, and the City presented unrebutted evidence that Plaintiff would have been approved for a REAL ID if the SAVE system indicated his asylum application was approved. See City's CSOF at ¶ 2, Plaintiff's CSOF at ¶ I.2, City's Reply CSOF at Responsive ¶ 2 (all noting Plaintiff's presentation of documentation); Fajardo Decl. at ¶ 10 (stating Fajardo would have issued Plaintiff a REAL ID if Plaintiff's asylum application was listed as approved); Rios Decl. at ¶¶ 4-6 (noting Plaintiff's documents were sufficient to process his renewal application, and stating Rios would have issued
(. . . continued)

Plaintiff's memorandum in opposition, Plaintiff focuses on the
City's discrimination against asylees based on their immigration
status. See Mem. in Opp. at 2-3.

Plaintiff appears to be alleging a claim that the City
treated Plaintiff as an asylee differently by refusing to grant
him a REAL ID license because he was incorrectly listed in the
City's database as a temporary resident, rather than a lawful
permanent resident. Plaintiff does not offer any evidence nor
does he argue that persons of different national origin or of
different alienage were treated more favorably by the City when
seeking a REAL ID from the DMV. Rather, Plaintiff argues that he
was not issued a REAL ID on account of his immigration status.

To analyze Plaintiff's equal protection claim, the
Court must first determine the relevant class to which Plaintiff
belongs. See Furnace, 705 F.3d at 1030. Here, Plaintiff's class
appears to be asylees who are lawful permanent residents
residing in the United States seeking REAL IDs. See Amended
Complaint at pgs. 1-4.

Plaintiff is not a member of a protected class for
purposes of his equal protection claim. Although aliens are a
suspect class, see Graham v. Richardson, 403 U.S. 365, 371-72
(1971), "classifications among aliens made pursuant to

_____

Plaintiff a REAL ID if Plaintiff's asylum application was listed
as approved).

20

immigration laws 'need only be supported by some rational basis to fulfill equal protection guarantees.'" Chavez-Cornejo v. Holder, 327 F. App'x 760, 761 (9th Cir. 2009) (quoting United States v. Barajas-Guillen, 632 F.2d 749, 752 (9th Cir. 1980)). Lawful permanent residents are not members of a suspect class. Chavez-Perez v. Ashcroft, 386 F.3d 1284, 1292 (9th Cir. 2004). "The government's different treatment of groups of aliens must be upheld unless it is wholly irrational." Id. (citation and internal quotation marks omitted). Accordingly, Plaintiff's equal protection claim is subject to the rational basis standard.

Here, Plaintiff has not offered admissible evidence that, when viewed in the light most favorable to Plaintiff, demonstrates the City acted irrationally by not issuing Plaintiff a REAL ID on July 20, 2023. The City relied on the SAVE database and guidance from the AAMVA in refusing to issue Plaintiff a REAL ID on July 20, 2023. Even if the City mistakenly relied on an outdated AAMVA chart for guidance, the City need not "behave optimally, but only rationally" to survive rational basis review. See Seaplane Adventures, LLC v. Cnty. of Marin, 71 F.4th 724, 731 (9th Cir. 2023). The City has offered evidence the DMV employees were attempting to comply with federal law. See Rios Decl. at ¶¶ 7, 9; Fajardo Decl. at ¶¶ 7-8.

Further, Plaintiff has not raised a genuine issue of material fact that the City acted intentionally in the alleged discrimination against him. The only evidence Plaintiff has offered in this regard is the City's use of the AAMV Guide in July 2023. <u>See</u> Plaintiff's CSOF at ¶ 29. However, the City has offered sufficient evidence establishing that any error, if an error was made in failing to issue Plaintiff a REAL ID, was not made with discriminatory intent. Rather, the City has established that City officials were attempting to comply with federal law.

Viewing the record in the light most favorable to Plaintiff, Plaintiff has not established a genuine issue of material fact as to his Equal Protection claim.

### A.    *Monell* Liability

Even if Plaintiff raised a triable issue of fact as to the alleged deprivation of a constitutional right, Plaintiff would need to establish municipal liability pursuant to <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), in order to hold the City liable. "[M]unicipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom," and "cannot be held liable **solely** because it employs a tortfeasor." <u>Benavidez</u>, 993 F.3d at 1153 (emphasis in <u>Benavidez</u>) (citations and quotation marks omitted). To establish liability on the

basis of a policy, a plaintiff "must prove that (1) he was
deprived of a constitutional right; (2) the municipality had a
policy; (3) the policy amounted to deliberate indifference to
[his] constitutional right; and (4) the policy was the moving
force behind the constitutional violation." Lockett v. Cnty. of
Los Angeles, 977 F.3d 737, 741 (9th Cir. 2020) (citation
omitted).

     The City argues Plaintiff's equal protection claim
fails because Plaintiff cannot establish the "deliberate
indifference" and "moving force" requirements. [Motion, Mem. in
Supp. at 17-19.] As to the deliberate indifference requirement,
Plaintiff has not established a triable issue of fact that the
City was deliberately indifferent to Plaintiff's constitutional
right of equal protection. "[M]ere negligence — or even gross
negligence — is not enough for deliberate indifference." Patel
v. Kent Sch. Dist., 648 F.3d 965, 976 (9th Cir. 2011) (citation
omitted).

> the standard we apply is even higher than gross
> negligence — deliberate indifference requires a
> culpable mental state. [L.W. v. Grubbs, 92 F.3d
> 894, 898–900 (9th Cir. 1996).] The state actor
> must "recognize[] [an] unreasonable risk and
> actually intend[] to expose the plaintiff to such
> risks without regard to the consequences to the
> plaintiff." Id. at 899 (internal quotation
> omitted). In other words, the defendant "knows
> that something **is** going to happen but ignores the
> risk and exposes [the plaintiff] to it." Id. at
> 900.

Id. at 974 (some alterations in Patel). A municipality is
deliberately indifferent when the need for a different action
"is so obvious, and the inadequacy so likely to result in the
violation of constitutional rights, that the policymakers of the
city can reasonably be said to have been deliberately
indifferent to the need." City of Canton v. Harris, 489 U.S.
378, 390 (1989).

For the same reasons the Court found that Plaintiff
did not establish a genuine issue of material fact as to the
City **intentionally** discriminating against Plaintiff, the Court
finds that Plaintiff has failed to establish a genuine issue of
material fact as to the City's deliberate indifference toward
Plaintiff.

Therefore, on this basis, Plaintiff has failed to
establish a genuine issue of material fact that the City could
be held liable pursuant to Monell.

## B. **Ruling**

Because Plaintiff has failed to establish a genuine
issue of material fact on his equal protection claim, the City
is entitled to summary judgment on this claim.

## VII. **Claims Pursuant to the Civil Rights Act of 1964**

Plaintiff appears to be bringing a claim pursuant to
Title VI and either Title III or Title II of the Civil Rights
Act of 1964. See Amended Complaint at pg. 10. The City argues:

(1) Plaintiff has failed to establish a genuine issue of material fact that the City unlawfully discriminated against him; and (2) Plaintiff's claims fail to satisfy the "deliberate indifference" and "moving force" requirements of Monell. [Motion, Mem. in Supp. at 19.]

    **A.**   **Title VI**

       Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A plaintiff has a private right of action under Title VI for claims based on intentional discrimination, not disparate impact. See Alexander v. Sandoval, 532 U.S. 275, 280-82 (2001). To show intentional discrimination, "plaintiffs must show that actions of the defendants had a discriminatory impact, and that defendants acted with an intent or purpose to discriminate based upon plaintiffs' membership in a protected class." The Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009) (citation omitted). Here, as explained above, Plaintiff has failed to establish a genuine issue of material fact that the City intentionally discriminated against Plaintiff.

B.    **Title III and Title II**

Plaintiff alleges a claim under Title III for
discrimination "in places of public accommodation owned or
operated by or from a State or its subdivisions." [Amended
Complaint at pg. 10, ¶ 6.] Title III authorizes the Attorney
General to initiate civil actions related to desegregation and
discrimination in public facilities. 42 U.S.C. § 2000b(a). A
private individual cannot bring suit pursuant to Title III of
the Civil Rights Act of 1964, 42 U.S.C. § 2000b, *et seq*. See,
e.g., Jefferson v. City of Fremont, No. C-12-0926 EMC, 2012 WL
1534913, at *3 (N.D. Cal. Apr. 30, 2012) (citing cases holding
that Title III does not create a private right of action).
Accordingly, insofar as Plaintiff asserts a Title III claim,
this claim fails as a matter of law.

Plaintiff may have intended to bring a claim pursuant
to Title II of the Civil Rights Act for discrimination "in
places of public accommodation owned or operated by or from a
State or its subdivisions." [Amended Complaint at pg. 10, ¶ 6.]
Title II entitles persons "to the full and equal enjoyment of
the goods, services, facilities, privileges, advantages, and
accommodations of any place of public accommodation . . .
without discrimination or segregation on the ground of race,
color, religion, or national origin." 42 U.S.C. § 2000a. As
stated above, Plaintiff has failed to raise a triable issue of

material fact that the City discriminated against him on account
of his race or national origin. Further, Plaintiff's claim fails
because damages are not available in Title II suits, and
Plaintiff's claim is exclusively for damages. See Amended
Complaint at pg. 13; Pickern v. Holiday Quality Foods Inc., 293
F.3d 1133, 1136 (9th Cir. 2002) (citation omitted); 42 U.S.C. §
2000a-3(a) (authorizing an aggrieved person to bring "a civil
action for preventive relief, including an application for a
permanent or temporary injunction, restraining order, or other
order").

For the reasons outlined above, Plaintiff fails to
establish a genuine issue of material fact as to his claims
brought pursuant to the Civil Rights Act of 1964, and these
claims fail as a matter of law. The City is entitled to summary
judgment on these claims.

## VIII. **Hawai`i Constitution**

Plaintiff brings claims under Article I, Sections 2
and 5 of the Hawai`i Constitution. See Amended Complaint at
pg. 12. The City argues there is no private right of action for
damages for violations of these constitutional provisions,
though the City notes the Court "need not decide this question"
because the claims would fail even if a private right of action
exists. [Motion, Mem. in Supp. at 23-24 & n.16.]

While some courts in this district have noted this issue is unclear, see McShane v. Dep't of Parks & Recreation, Civ. No. 20-00244-ACK-WRP, 2021 WL 2582810, at *13 n.8 (D. Hawai`i June 23, 2021), this Court's review confirms that courts in this district "concur[], at least to the extent the claims are brought for money damages" that "there is no private cause of action under article I, section 5 of the Hawai`i Constitution." See Waite v. Honolulu Liquor Comm'n, Civil No. 23-00356 MWJS-RT, 2024 WL 4851600, at *7 (D. Hawai`i Nov. 21, 2024) (citing Denis v. Ige, 557 F. Supp. 3d 1083, 1095-96 (D. Haw. 2021); Kaahu v. Randall, Civ. No. 14-00266, 2018 WL 472996, at *7 (D. Haw. Jan. 18, 2018)); see also Shores v. Hay, CIV. NO. 21-00455 LEK-WRP, 2023 WL 5350832, at *7 (D. Hawai`i Aug. 21, 2023) (concluding that the plaintiff's due process claim for damages under Article I, Section 5 of the Hawai`i Constitution failed as a matter of law). Courts in this district, including this Court, have declined to infer a cause of action directly under the Hawai`i Constitution. See Puana v. Kealoha, 587 F. Supp. 3d 1035, 1055 n.7 (D. Hawai`i 2022) (noting state constitutional claims are not covered by Section 1983, and declining to infer a claim directly under the Hawai`i Constitution because Plaintiff fails to provide legal authority that such a claim is cognizable); Denis, 557 F. Supp. 3d at 1095-96 (noting courts in this district have declined to

28

recognize a cause of action for damages for rights guaranteed by the Hawai`i Constitution, and collecting cases).

Further, Hawai`i constitutional claims are not cognizable under Section 1983. See Puana, 587 F. Supp. 3d at 1055 n.7.

Because no private right of action exists in order for Plaintiff to bring claims under Article I, Sections 2 and 5 of the Hawai`i Constitution, and because these claims are not cognizable under Section 1983, these claims fail as a matter of law. Therefore, summary judgment is warranted as to Plaintiff's claims brought pursuant to Article I, Sections 2 and 5 of the Hawai`i Constitution.

## CONCLUSION

On the basis of the foregoing, the City's Motion for Summary Judgment as to Plaintiff's Amended Complaint, filed October 11, 2024, is GRANTED. Summary judgment is granted in favor of the City as to all claims in Plaintiff's Amended Complaint, filed April 3, 2024. The Court DIRECTS the Clerk's Office to enter judgment in favor of the City on February 25, 2025.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 10, 2025.



/s/ Leslie E. Kobayashi
_____
Leslie E. Kobayashi
Senior U.S. District Judge

EVGENY FIRSOV VS. CITY AND COUNTY OF HONOLULU; CV 23-00429 LEK-KJM; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S AMENDED COMPLAINT